NEWMAN *v.* MANUFACTURERS NATIONAL
BANK OF DETROIT.

1. BILLS AND NOTES—NEGOTIABLE INSTRUMENTS—DATE OF CHECKS.
   The negotiability of an instrument is not affected by the fact
   that it is undated, antedated, or predated, and where the in-
   strument or any signature thereon is dated, the date is pre-
   sumed to be correct (PA 1962, No 174, § 3114).

2. SAME—NEGOTIABLE INSTRUMENTS—HANDWRITING—TYPEWRITING—
   PRINTING.
   Handwritten terms of a negotiable instrument control typewritten
   and printed terms, and typewritten terms control printed terms
   (PA 1962, No 174, § 3118).

3. BANKS AND BANKING—DATE OF CHECKS.
   Defendant bank, which merged with another bank in 1955, but
   continued to honor checks of its depositors written on the checks
   of said other bank *held,* to have been within its rights in as-
   suming that 2 checks, actually written by plaintiff in 1955
   and left undated, were properly dated April 16, 1964, where
   the printed dateline on said checks had been completed by
   writing the number "6" over the printed number "5" and in-
   serting thereafter the number "4", so as to cause the checks
   to appear as if written in 1964, since, absent notice to the
   contrary, the bank had a right to presume that said date was
   proper and filled in by plaintiff or someone authorized by him
   (PA 1962, No 174, §§ 3114, 3118).

4. SAME—GOOD FAITH—LIABILITY FOR LOSS TO DEPOSITOR.
   A bank, acting in good faith, is not liable for loss to a depositor
   which arises in the exercise of ordinary care (PA 1962, No 174,
   § 4101).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 11 Am Jur 2d, Bills and Notes §§ 207, 208.
[2] 11 Am Jur 2d, Bills and Notes § 65.
[3] 10 Am Jur 2d, Banks §§ 616, 617.
[4] 10 Am Jur 2d, Banks §§ 428, 616, 631.
[5] 10 Am Jur 2d, Banks §§ 538, 539.
[6] 10 Am Jur 2d, Banks § 413.
[7] 53 Am Jur, Trial § 349.
[8] 10 Am Jur 2d, Banks § 6; 21 Am Jur 2d, Customs and Usages
    §§ 37, 38.
[9] 10 Am Jur 2d, Banks §§ 552, 616, 617.

5. SAME—REGULATIONS HAVING EFFECT OF AGREEMENTS—ORDINARY
CARE.

   Bank's action or nonaction, when approved by statute or taken
   pursuant to Federal Reserve regulations or operating letters,
   constitutes the exercise of ordinary care, and in the absence
   of special instructions, action or nonaction taken by a bank,
   consistent with clearing house rules and the like or with a
   general banking usage not disapproved by statute, prima facie
   constitutes the exercise of ordinary care (PA 1962, No 174,
   § 4101).

6. SAME—BILLS AND NOTES—NEGOTIABLE INSTRUMENTS—LIABILITY
TO DEPOSITOR.

   A bank which in good faith makes payment to a holder may
   charge the indicated item to its customer's account according
   to the tenor of his completed item, even though the bank knows
   the item has been completed, unless the bank has notice that
   the completion was improper (PA 1962, No 174, § 4401).

7. TRIAL—MOTION FOR DIRECTED VERDICT.

   The court looks upon the evidence in the light most favorable
   to the party opposing a motion for directed verdict.

8. EVIDENCE—EXPERT TESTIMONY—STANDARD OF CARE IN COMMU-
NITY—BANKING USAGE.

   Refusal of trial court to allow 2 witnesses produced by plaintiff
   to testify concerning the handling of check forms carried over
   and used by merged banks, for the purpose of showing the
   general banking usage and practice in the community, *held*,
   proper, where the preliminary testimony of 1 witness estab-
   lished that he was not qualified to give such testimony and
   plaintiff, in fact, withdrew said witness, and the testimony
   of the other witness was that each bank developed its own
   procedures, there being no general banking usage and practice
   in the community.

9. BANKS AND BANKING—BILLS AND NOTES—NEGOTIABLE INSTRU-
MENTS—DIRECTED VERDICT.

   Directed verdict for defendant bank in plaintiff's action to re-
   cover loss incurred because of defendant's payment of checks
   written by plaintiff in 1955 on check form of bank with which
   defendant merged in 1955, which checks were left undated
   by plaintiff and bore a date of April 16, 1964, when paid
   by defendant on April 22, 1964, *held*, proper, where said date
   had been completed by writing the figure "6" over the printed
   figure "5" and thereafter inserting the figure "4", so as to
   cause the checks to appear as if written in April, 1964, it was
   customary practice for defendant to pay checks written by its

depositors on the forms of the other bank, defendant admittedly acted in good faith in paying the checks, plaintiff presented no evidence to establish lack of ordinary care by defendant in paying the checks, and plaintiff admittedly failed to notify defendant that the checks were outstanding or that payment should be stopped since, absent notice to the contrary, defendant had a right to presume that the date appearing on the checks was correct and that the items had been completed by plaintiff or someone authorized by him, thereby authorizing the bank to charge payments against plaintiff's account (PA 1962, No 174, §§ 3114, 3118, 4101, 4401).

Appeal from Common Pleas Court of Detroit; Pernick (Joseph J.), J. Submitted Division 1 January 5, 1967, at Detroit. (Docket No. 883.) Decided September 19, 1967. Rehearing denied October 12, 1967.

Complaint by Marvin Newman against Manufacturers National Bank of Detroit to recover charges against plaintiff's account as the result of alleged improper payment of 2 of plaintiff's checks. Directed verdict and judgment for defendant. Motion for new trial denied. Plaintiff appeals. Affirmed.

*Liss & Newman,* for plaintiff.

*Bodman, Longley, Bogle, Armstrong & Dahling* (*Charles F. Hosmer,* of counsel), for defendant.

HOLBROOK, J. Plaintiff brought an action in the common pleas court in the city of Detroit in 1964, claiming that defendant bank improperly paid 2 of plaintiff's checks totaling $1,200. Upon completion of plaintiff's proofs defendant made a motion for a directed verdict of no cause of action which was granted. Plaintiff moved for a new trial which was denied. Plaintiff appeals and raises 3 questions for review: (1) When a bank has acted in good faith, being defined as "honesty in fact,"[1] does the bank

---

[1] PA 1962, No 174 (CL 1948, § 440.1201 [Stat Ann 1964 Rev § 19-.1201]).

also owe a duty to its customers to exercise at least ordinary care in the handling of the customer's funds? (2) Did the trial court err in ruling that the plaintiff did not introduce sufficient testimony as to accepted standards of ordinary care and banking procedures and defendant's failure to meet such standards so as to present a prima facie cause of action? (3) Did the trial court err in ruling inadmissible the testimony of certain witnesses showing practices followed in their bank but not purporting to be an accepted standard practice of banks in the community?

The pertinent facts appear to be as follows: Belle Epstein, an employee and trusted business associate of plaintiff over a period of years, loaned plaintiff $8,000 in 1955 to be used to purchase certain land contracts. Later in the year when Belle Epstein decided to leave the State, she asked plaintiff for repayment. Plaintiff sold 2 of the land contracts and paid her all but $1,200. As evidence of this debt, plaintiff drew 2 checks on the Industrial National Bank of Detroit, one for $1,000 and the other for $200. The checks were left undated. Plaintiff testified that he paid all but $300 of this debt during the following next four years. Thereafter, Belle Epstein told plaintiff that she had destroyed the 2 checks.

Late in 1955, the Industrial National Bank of Detroit was merged with and became part of the Manufacturers National Bank of Detroit, defendant herein. Defendant continued to honor checks drawn on the Industrial National Bank of Detroit from the inception of the merger and was cashing such checks in April of 1964. It was necessary for a clerk of the bank in such cases to look up the account number and place it on such checks,

Plaintiff never notified defendant bank to stop payment on the checks nor that he had issued the checks without filling in the dates. The date line of Industrial National Bank of Detroit check forms contained the first 3 numbers of the year but left the last numeral, month and day entries blank, viz., "Detroit 1, Mich. .......... 195..." The checks were cashed in Phoenix, Arizona, April 17, 1964, and the date line of each check was completed as shown in the exhibits appearing in the footnote.[2]

2

They were presented to and paid by Manufacturers National Bank of Detroit, April 22, 1964, under the indorsement of Belle Epstein. The plaintiff protested such payment when he was informed of it about a month later. Defendant bank denied liability and plaintiff brought suit.

Under the first issue raised by plaintiff, he contends that the checks in question were on their face stale and altered; that he should have been consulted before they were paid and the failure to so inquire before payment constituted an absence of ordinary care. Plaintiff also claims defendant failed to follow the established standard of practice and procedure of banks in similar situations.

The 2 checks were dated April 16, 1964. It is true that the dates were completed in pen and ink subsequent to the date of issue. However, this was not known by defendant. Defendant had a right to rely on the dates appearing on the checks as being correct. PA 1962, No 174, § 3114 (CL 1948, § 440.3114 [Stat Ann 1964 Rev § 19.3114]) provides in part as follows:

"(1) The negotiability of an instrument is not affected by the fact that it is undated, antedated or postdated. * * *

"(3) Where the instrument or any signature thereon is dated, the date is presumed to be correct."

Also, PA 1962, No 174, § 3118 (CL 1948, § 440.3118 [Stat Ann 1964 Rev § 19.3118]) provides in part as follows:

"The following rules apply to every instrument: * * *

"(b) Handwritten terms control typewritten and printed terms, and typewritten control printed."

The defendant bank had been honoring checks written on the Industrial National Bank of Detroit.

The printed portion of the date lines on such checks were the same as on the 2 checks in question and were treated the same as all other checks. Without notice to the contrary, defendant was within its rights to assume that the dates were proper and filled in by plaintiff or someone authorized by him.

Article 4 of the uniform commercial code—bank deposits and collections, PA 1962, No 174, § 4101 et seq. (CL 1948, § 440.4101 et seq. [Stat Ann 1964 Rev § 19.4101 et seq.]) applies to the transactions in issue here. PA 1962, No 174, § 4103 (CL 1948, § 440.4103 [Stat Ann 1964 Rev § 19.4103]) provides in part as follows:

"(1) The effect of the provisions of this article may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable.

"(2) Federal Reserve regulations and operating letters, clearinghouse rules, and the like, have the effect of agreements under subsection (1), whether or not specifically assented to by all parties interested in items handled.

"(3) Action or nonaction approved by this article or pursuant to Federal Reserve regulations or operating letters constitutes the exercise of ordinary care and, in the absence of special instructions, action or nonaction consistent with clearinghouse rules and the like or with a general banking usage not disapproved by this article, prima facie constitutes the exercise of ordinary care. * * *

"(5) The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and

where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence." (Emphasis supplied.)

Plaintiff admitted at trial that defendant acted in good faith in honoring the 2 checks of plaintiff in question, and therefore defendant's good faith is not in issue.

In order to determine if defendant bank's action in honoring plaintiff's 2 checks under the facts present herein constituted an exercise of proper procedure, we turn to article 4 of the UCC. PA 1962, No 174, § 4401 (CL 1948, § 440.4401 [Stat Ann 1964 Rev § 19.4401]) provides as follows:

"(1) As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft.

"(2) A bank which in good faith makes payment to a holder may charge the indicated account of its customer according to

"(a) the original tenor of his altered item; or

"(b) *the tenor of his completed item, even though the bank knows the item has been completed unless the bank has notice that the completion was improper.*" (Emphasis supplied.)

In a motion for directed verdict, the court looks upon the evidence in the light most favorable to the party opposing the motion. *Budman* v. *Skore* (1961), 363 Mich 458. In so doing, we conclude it was shown that 2 checks were issued by plaintiff in 1955, filled out but for the dates which were subsequently completed by the payee or someone else to read April 16, 1964, and presented to defendant bank for payment, April 22, 1964. Applying the rules set forth in the UCC as quoted herein,[3] the action of the

---

[3] Approved action taken under PA 1962, No 174, § 4401(2)(b) (CL 1948, § 440.4401[2][b] [Stat Ann 1964 Rev § 19.4401(2)(b)]).

defendant bank in honoring plaintiff's checks was in good faith and in accord with the standard of care required under the UCC.

The plaintiff attempted to show the general banking usage and practice in the community in dealing with check forms carried over and used by merged banks. Plaintiff offered 2 witnesses, Mr. Carl Ross and Mr. Kenneth S. Patton, both of National Bank of Detroit. Mr. Ross testified that he knew nothing about defendant's procedure and nothing about the facts involved in this case. He had no formal training in banking procedure, and was unaware of the procedures of the comptroller of the currency and the Detroit clearinghouse. Plaintiff withdrew this witness. Mr. Patton testified he also knew nothing about the checks involved in the case. He did not know of any procedures of the comptroller of the currency. He did know of the rules of the Detroit clearinghouse but said they were inapplicable. The American Banking Institute, for which he was an instructor, had no applicable rules. Mr. Patton's testimony in part is as follows:

"*The Court.* But there is no standard set forth for your bank and other banks in the city or State; you haven't discussed your processing method with any other bank?

"*A.* Only casually, perhaps—the people in the trade getting together and talking about their business.

"*The Court.* No definite exchange of ideas or standards; is there a standard set up for the processing of checks or does each bank develop its own procedure?

"*A.* So far as I know, each bank develops its own."

It is obvious the court's refusal to allow Mr. Pat-

ton to testify as an expert on standards of general banking usage was proper.

Plaintiff cross-examined Mr. Fox, an officer of defendant bank, and attempted to establish through him a standard of banking usage. However, Mr. Fox testified that the defendant bank properly handled the checks in question.

Plaintiff completely failed to introduce any evidence which would present an issue of fact as to defendant's liability.

Plaintiff's pleading also sets forth 2 counts based on negligence. He fails to cite any authority applying to the facts of this case which would hold defendant liable other than under the UCC. Since we have determined that there was no liability under the UCC, plaintiff cannot succeed on this appeal.

Affirmed. Costs to appellee.

Lesinski, C. J., and Levin, J., concurred.